UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>          Plaintiff,<br><br>  v.<br><br>GLEN ARTHUR JACKSON,<br><br>          Defendant. | Case No. 2:17-cr-0336-KJD-CWH<br><br>ORDER |

Presently before the Court is Defendant's Emergency Motion for Order Reducing Sentence or Modifying Judgment under 18 U.S.C. § 3582 (c)(1)(A)(i) and Authorizing Any Remaining Portion of His Sentence to be Served on Home Confinement (#52). The Government filed a response in opposition (#56) to which Defendant replied (#58). Defendant then filed a Supplement (#59) and a Motion to Seal (#60) the supplemental exhibit. Good cause being found the motion to seal is granted. Also before the Court is the Government's Motion to Strike Defendant's Oversized Motion (#55) which Defendant opposed (#59).

I. BACKGROUND

On January 22, 2019, Defendant Jackson pled guilty to receipt of child pornography under 18 U.S.C. § 2252A(a)(2). The stipulated facts showed that on or about October 12, 2016, Defendant uploaded 30 images of child pornography to his Flickr user account. Two of the images are described as stipulated:

> i. Img.30-1.jpg – the image depicts a white female with brown hair lying on what appears to be a bed with a camouflage comforter. The female is completely nude, her legs spread open and her arms pulled back beside her head. The erect penis of a white male, who is positioned out of frame, is shown touching the top of the female's vagina. Based on the female's physical development, investigators estimated her to be between 4-6 years old.

        ii.        Img.33-1.jpg – the image depicts the close-up of the face and upper body of a white female with long blonde hair in a front of profile. The female is nude. She appears to be bracing herself by her arms on something/someone. The erect penis of a white male, who is positioned out of frame, is shown positioned between the female's arms. The head of the penis is inside the female's mouth. Based on the female's development, investigators estimated her to be between 2-4 years old.

As a result of the upload, a CyberTip was generated and sent to law enforcement. A search warrant was executed on February 7, 2017 at Defendant's residence. Defendant, after being duly warned of his rights, admitted to receiving, possessing and distributing child pornography for over ten (10) years. A forensic examination of devices in his home revealed 1,651 images and 149 videos depicting child pornography. The Court will refrain from further recitation of the images of sexual abuse and torture of children found in Defendant's home collection but details are available in the plea agreement.

While Defendant denied ever abusing a child, during the investigation Defendant's daughter alleged that he sexually abused her when she was eleven (11) years old. Further, Defendant admits that he has a predilection for nine (9) year old children. The conduct underlying the offense took place at defendant's home via the internet. Defendant's plan for release is to maintain an apartment living on his own.

On April 23, 2019, the Court sentenced him to a term of imprisonment of 108 months, followed by lifetime supervision. The Court considered Defendant's age and health, contributions to the community and family support when it departed below the low-end of the guideline range, 151 months. His projected release date is June 27, 2025.

Defendant is housed at Big Spring FCI ("Big Spring"). The Bureau of Prisons ("BOP") currently reports one (1) active inmate cases of COVID-19, eleven (11) active staff cases, three (3) inmate deaths and 790 inmates recovered at Big Spring at the time of this writing. See Bureau of Prisons (BOP), COVID-19 Cases (updated daily) (last accessed January 22, 2021).[1] Big Spring FCI houses approximately 888 total inmates.

---

[1] bop.gov/coronavirus/

Defendant asserts his age and medical conditions make him particularly vulnerable to serious harm from COVID-19. Specifically, he is seventy (70) years old, has obesity, hypertension, sleep apnea and has already suffered damage from a bout with COVID-19. Defendant also argues his twenty-five (25) years as a smoker maker him more susceptible to Covid-19.

BOP recorded his positive test for COVID-19 on October 8, 2020 when he was admitted to a community hospital. Defendant was discharged to Big Spring approximately October 19, 2020 when he no longer needed the supplemental oxygen Big Spring was not equipped to provide.

II. LEGAL STANDARD

The district court that imposed sentence on a criminal defendant has authority to modify the term of imprisonment under the compassionate release statute, 18 U.S.C. § 3582(c)(1)(A), as amended by the First Step Act of 2018, Pub. L. No. 115-391, 132 Stat. 5194 (Dec. 21, 2018). That statute provides, in relevant part:

> [T]he court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that […]extraordinary and compelling reasons warrant such a reduction […] and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission[.]

18 U.S.C. §§ 3582(c)(1)(A), 3582(c)(1)(A)(i).

If the defendant has exhausted administrative remedies, the analysis is twofold. First, the court must consider the same factors applicable at the original sentencing, enumerated in 18 U.S.C. § 3553(a), to the extent they remain applicable at the time the motion is brought. 18 U.S.C. § 3582(c)(1)(A). Second, the court must find "extraordinary and compelling reasons" to release a defendant from BOP custody in a policy statement. Id.

- 3 -

Here, the Government agrees that the Court has the authority to rule on Defendant's motion because Defendant exhausted his administrative remedies. The Court will deny Defendant's motion because Defendant is still a danger to the community and because compassionate release is not necessary to protect Defendant's health.

III. DISCUSSION

    A. Danger to the Community

Defendant has not met his burden to show he is not a danger to the community. The government argues defendant remains a danger to the community. In considering dangerousness, the Court is guided by the sentencing factor focused on "the need for the sentence imposed … to protect the public from further crimes of the defendant." 18 U.S.C. § 3553(a)(2)(C). It also considers the Sentencing Guidelines policy statement that before reducing a term of imprisonment that "defendant is not a danger to the safety of any other person or the community, as provided in 18 U.S.C. § 3142(g)[.]"

Many district courts who have analyzed similar motions in the midst of the COVID-19 pandemic have concluded that a defendant who has suffered the same conviction as defendant's should not be released to home confinement, where there is a risk he will reoffend. See, *e.g.*, United State v. Boyle, No. 2:16-cr-00048-KJM, 2020 WL 6044175, *3 (E.D. Cal. October 13, 2020); United States v. Feiling, 453 F. Supp. 3d 832, 842 (E.D. Va. 2020) (denying motion for compassionate release of defendant convicted of possession of child pornography in part because defendant committed offense while at home, "meaning a term of home confinement would be less likely to protect the public"); United States v. Miezin, No. 1:13-CR-15, 2020 WL 1985042, at *5 (N.D. Ohio Apr. 27, 2020) (denying motion for compassionate release of defendant convicted of receipt and distribution of child pornography, in part because "[i]n today's society with smartphones, tablets, laptops, smart TVs, and countless other devices, it would not be possible to place [defendant] in home confinement and eliminate his ability to engage in his prior criminal conduct."); United States v. Hylander, No. 18-CR-60017, 2020 WL 1915950, at *3 (S.D. Fla. Apr. 20, 2020) (denying motion for compassionate release of defendant convicted of possession of child pornography because "defendant proposes to be released to the home with his

wife and brother-in-law, which is precisely the location in which the offense for which he was convicted was committed, and presents a concern that Defendant will reoffend."); *cf.* United States v. Fischman, No. 16-CR-00246-HSG-1, 2020 WL 2097615, at *3 (N.D. Cal. May 1, 2020) (granting motion for compassionate release by defendant convicted of possession of child pornography where defendant had served majority of his sentence, taken steps towards rehabilitation while in prison, and was scheduled to be moved to a halfway house in a few months).

Here, Defendant asserts that prior to his underlying conviction he had no criminal history. He further argues that his underlying conviction was not violent and that he is unlikely to reoffend due to his age and health. However, it is easy to note that he was able to keep his possession and distribution of child pornography hidden for at least ten years, because the conduct occurred in the privacy of his home. Further, while possessing child pornography is not "violent", the Court cannot ignore the fact that Jackson capitalized on the actions of others who were willing to exploit and violate children. His conduct creates a market that can only be filled by those willing to violate and abuse children. Jackson admitted that he had a sexual predilection for nine year-old children. Thus, his lack of a criminal record and the nature of his offense do not sufficiently mitigate the fact that Defendant, as in similar cases, proposes to be returned to the same environment in which he committed his prior offenses. Further, his conduct was discovered at age 67. He will be no less likely at 70 to the same things in the privacy of his home. There has been no evidence that shows that his health conditions differ now than they did at the time he was arrested.

The Court considered each of the statutory factors at the time that it sentenced Defendant. At the time of sentencing, the Court considered his age and health. Defendant already received a significant departure when he was sentenced. The goal of protecting the public from further crimes of the Defendant would not be met by reducing Defendant's sentence to time served, effectively giving Defendant a sentence below the statutory minimum. Setting aside the other factors relevant to release under the compassionate release statute, defendant has not met his burden of showing he would not be a danger to the community if he was released. Therefore, on

this basis alone the Court denies Defendant's motion. The Court sees no need to depart from its previous sentence.

### B. Extraordinary and Compelling Circumstances

While COVID-19 is not to be taken lightly and its mere existence raises genuine questions going to the heart of whether extraordinary and compelling circumstances coupled with Defendant's health justify his release, there are two changes in circumstance that prevent the Court from finding that Defendant must be granted compassionate relief.

First, despite the problems with prevention in the prison system, Big Spring currently reports only one inmate infection and eleven staff infections. Big Spring also reports that 790 inmates have recovered from COVID-19. With the widespread advance of community transmission cases in Las Vegas, it does not appear that Defendant is any safer on supervised release than in his present situation. While Defendant complains that his institution is not equipped to handle an inmate with a severe infection, his own case demonstrates that the community hospital adequately cared for Defendant.

Second, Defendant has already recovered from COVID-19. The most recent science concludes that neutralizing antibodies are stably produced for at least 5-7 months after SARS-CoV-2[2] infection. See Tyler J. Ripperger *et al.*, Orthogonal SARS-CoV-2 Serological Assays Enable Surveillance of Low-Prevalence Communities and Reveal Durable Humoral Immunity, Immunity (2020), https://www.cell.com/immunity/fulltext/S1074-7613(20)30445-3. Thus, Defendant's risk is greatly diminished by his natural antibodies. Of nearly thirty million cases worldwide to date, there exist only about 10 documented and confirmed cases of re-infection. Id. at 10. Further, the Bureau of Prisons has begun immunizing high risk inmates. Accordingly, the Court denies Defendant's motion.

### IV. Conclusion

Accordingly, IT IS HEREBY ORDERED that Defendant's Emergency Motion (#52) for Order Reducing Sentence or Modifying Judgment under 18 U.S.C. § 3582 (c)(1)(A)(i) is **DENIED**;

---

[2] SARS-CoV-2 is the causative agent of coronavirus disease 2019 (COVID-19). Ripperger, *supra* at 1.

1     IT IS FURTHER ORDERED that the Government's Motion to Strike Defendant's
2 Oversized Motion (#55) is **DENIED**;
3     IT IS FURTHER ORDERED that Defendant's Motion to Seal (#60) is **GRANTED**.
4 Dated this 25th day of January 2021.

_____
Kent J. Dawson
United States District Judge